IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WILLIAM EDWARD FERGUSON, § <br> § <br> Plaintiff/Counter-Defendant, § <br> § <br> v. § <br> § <br> U.S. BANK TRUST NATIONAL § <br> ASSOCIATION, NOT IN ITS § <br> INDIVIDUAL CAPACITY, BUT § <br> SOLELY AS TRUSTEE OF THE § <br> TRUMAN 2021 SC9 TITLE TRUST, § <br> § <br> Defendant/Counter-Plaintiff, § <br> § <br> v. § <br> § <br> RUSHMORE LOAN MANAGEMENT § <br> SERVICES, LLC, § <br> § <br> Defendant. § | Civil Action No. 4:23-cv-122-ALM-KPJ |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant U.S. Bank Trust National Association's, not in its Individual Capacity, but Solely as Trustee of the Truman 2021 SC9 Title Trust ("U.S. Bank"), Motion for Summary Judgment and Brief in Support (the "Motion for Summary Judgment") (Dkt. 24). Plaintiff William Edward Ferguson ("Plaintiff") did not file a response. For the reasons that follow, the Court recommends the Motion for Summary Judgment (Dkt. 24) be **GRANTED**.

**I.     BACKGROUND**

**A.     Factual Background**

On June 12, 2015, Plaintiff executed a home equity note (the "Note") in the original principal amount of $318,200.00. Dkt. 24-2 at 2–4. Contemporaneously, Plaintiff executed a

1

corresponding security instrument (the "Security Instrument") (collectively with the Note, the "Loan Agreement"), which secured the repayment of the Note with the real property located at 4104 Forbes Drive, Plano, Texas 75093 (the "Property"). Dkt. 24-3 at 2–3, 11. The Security Instrument was later assigned to U.S. Bank, who is the current holder of the Note. *See* Dkts. 24-11 at 2; 24-12 at 2. Plaintiff failed to timely make all payments due, resulting in a default under the Loan Agreement. Dkt. 24-13 at 3–4. On or about March 16, 2022, a notice of default and intent to accelerate was mailed to Plaintiff. *Id.* The default was not cured, and the balance of the Note was accelerated. Dkt. 24-14 at 3, 6.

On September 20, 2022, U.S. Bank filed an application for foreclosure in the 471st District Court of Collin County, Texas. Dkt. 24-1 at 6. After receiving Plaintiff's answer, the 471st District Court signed a foreclosure order on December 9, 2022. Dkt. 24-15 at 2–3. U.S. Bank mailed a notice of foreclosure to Plaintiff on December 29, 2022, notifying Plaintiff of the foreclosure sale scheduled for February 7, 2023. Dkt. 24-16 at 2–9. As of May 23, 2023, the balance owed on the Loan Agreement was $435,663.64. Dkt. 24-18 at 2.

**B.     Procedural History**

On February 1, 2023, Plaintiff filed his Original Petition (the "Petition") in the 471st Judicial District Court, Collin County, Texas ("State Court"). Dkt. 5 at 1. In the Petition, Plaintiff contends that the Loan Agreement violates provisions of the Texas Constitution that regulate home equity loans within the State. *See Id.* at 3–4. Specifically, Plaintiff alleges: (1) he did not receive "a copy of all finalized and signed loan documents at closing," in violation of Article XVI, § 50(a)(6)(Q)(v) of the Texas Constitution; (2) the loan closed before twelve days after he received notice that the loan was governed by Article XVI, in violation of Article XVI, § 50(a)(6)(M)(i) of the Texas Constitution; and (3) the lender did not properly execute an acknowledgement of fair

2

market value, in violation of Article XVI, § 50(a)(6)(Q)(ix) of the Texas Constitution. *Id.* Based on these violations, Plaintiff brings a claim for suit to quiet title and requests declaratory and injunctive relief. *Id.* at 4–6. On February 15, 2023, U.S. Bank removed this action from State Court and filed its Original Answer and Counterclaim Against Plaintiff (the "Answer") (Dkt. 3). *See* Dkts. 1; 3. In the Answer (Dkt. 3), U.S. Bank denies Plaintiff's allegations and asserts counterclaims for foreclosure and, in the alternative, equitable subrogation. Dkt. 3 at 1–5, 11–12. On February 16, 2023, Plaintiff filed an Amended Complaint (Dkt. 6), alleging the same constitutional violations and bringing the same causes of action as asserted in the Petition (Dkt. 5). *See* Dkt. 6.

On July 27, 2023, U.S. Bank filed the Motion for Summary Judgment (Dkt. 24), wherein U.S. Bank argues that (1) it is entitled to summary judgment on Plaintiff's claim because the loan complied with the Texas Constitution; (2) Plaintiff's requests for a declaratory judgment and a permanent injunction fail as a matter of law; and (3) it is entitled to summary judgment on its counterclaim of foreclosure because Plaintiff defaulted on the Loan Agreement. Dkt. 24 at 10–11. Plaintiff did not file a response.

On August 11, 2023, Plaintiff's counsel filed an Unopposed Motion to Withdraw as Counsel for Plaintiff (the "Motion to Withdraw") (Dkt. 27), wherein Plaintiff's counsel represented that they had been "unable to communicate with Plaintiff since May 23, 2023," and "Plaintiff has not responded to emails or telephone calls." Dkt. 27 at 2. The Court set the Motion to Withdraw (Dkt. 27) for a hearing (the "Hearing") and ordered Plaintiff, along with Plaintiff's counsel, to be present at the Hearing. *See* Dkt. 31. The Hearing was held on September 11, 2023. Dkt. 32. While Plaintiff's counsel and U.S. Bank's counsel appeared at the Hearing, Plaintiff did not. *See id.* At the Hearing, Plaintiff's counsel represented that they had been unable to

3

communicate with Plaintiff since May 23, 2023. *See id.* Specifically, Plaintiff's counsel represented that they attempted on multiple occasions to reach Plaintiff by both email and telephone, to no avail. *See id.* Plaintiff's counsel further represented that Plaintiff had not fulfilled his obligation to pay Plaintiff's counsel's fees. *See id.*

On September 14, 2023, the Court granted Plaintiff's counsel's Amended Unopposed Motion to Withdraw as Counsel for Plaintiff (Dkt. 33),[1] permitting Plaintiff's counsel to withdraw and ordering Plaintiff to "advise the Court of new counsel or his decision to proceed *pro se*" by October 13, 2023. Dkt. 34 at 3. That same day, the Clerk of Court sent this order to Plaintiff by certified mail, return receipt requested, at his last known address and by e-mail at the e-mail address provided by Plaintiff's counsel. On October 12, 2023, the mail was returned as undeliverable and marked as "RETURN TO SENDER – UNCLAIMED – UNABLE TO FORWARD." *See* Dkt. 35.

On November 3, 2023, the Court ordered that if Plaintiff intended to pursue claims against U.S. Bank, Plaintiff shall respond to the Court's order by November 17, 2023. Dkt. 37 at 2. On November 11, 2023, the Clerk of Court sent this order to Plaintiff by certified mail, return receipt requested, at his last known address and by e-mail at the e-mail address provided by Plaintiff's counsel. On December 15, 2023, the mail was returned as undeliverable and marked as "RETURN TO SENDER – VACANT – UNABLE TO FORWARD." *See* Dkt. 39.

On February 9, 2024, the Court ordered that Plaintiff shall file a response, if any, to the Motion for Summary Judgment (Dkt. 24) no later than seven (7) days after receipt of the order. Dkt. 40 at 1. On February 12, 2024, the Clerk of Court sent this order to Plaintiff by certified mail,

---

[1] Plaintiff's counsel amended the Motion to Withdraw (Dkt. 27) after the hearing to include counsel that was inadvertently omitted from the Motion to Withdraw (Dkt. 27). *See* Dkt. 33.

return receipt requested, at his last known address and by e-mail at the e-mail address provided by Plaintiff's counsel. To date, Plaintiff has not filed a response.

## II.  LEGAL STANDARD

"One of the principal purposes of . . . summary judgment . . . is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 325).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases omitted). Substantive law identifies which facts are material. *Id.* at 248. A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. *Id.* Dispute over a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Trial courts "must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty*, 956 F.3d 785, 791 (5th Cir. 2020).

5

When appropriate, the Court can grant summary judgment even if the nonmoving party fails to respond to the motion for summary judgment. FED. R. CIV. P. 56(e)(3); *see also Vargas v. McHugh*, No. 14-cv-334, 2015 WL 10766924, at *2 (W.D. Tex. May 13, 2015). "A motion for summary judgment cannot be granted simply because there is no opposition . . . ." *Day v. Wells Fargo Bank Nat'l Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014) (quoting *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)). "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995).

Nonetheless, the Court may grant summary judgment if the movant has made a prima facie showing that it is entitled to such relief. *See Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). The court may also accept as undisputed the facts set forth in support of the unopposed motion for summary judgment. *See id.*; *Yowman v. Jefferson Cnty. Cmty. Supervision & Corr. Dep't*, 370 F. Supp. 2d 568, 581–82 (E.D. Tex. 2005).

### III.   ANALYSIS

U.S. Bank moved for summary judgment on Plaintiff's claim for suit to quiet title and requests for declaratory judgment and permanent injunction, as well as its own claim for foreclosure.

**A.   Plaintiff's Claims**

    **1.   Suit to Quiet Title Claim**

"[A] suit to quiet title 'is an equitable action that involves clearing a title of an invalid charge against the title.'" *Cruz v. CitiMortgage, Inc.*, No. 11-cv-2871, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (emphasis omitted) (quoting *Longoria v. Lasater*, 292 S.W.3d 156, 165

n.7 (Tex. App.—San Antonio 2009, pet. denied)). To succeed on a quiet title action, "Plaintiff must show that: (1) he has an interest in the Property, (2) title to the Property is affected by a claim by [U.S. Bank], and (3) the claim, although facially valid, is invalid or unenforceable." *See McLerran v. Flagstar Bank, FSB*, No. 12-cv-718, 2013 WL 2468733, at *2 (E.D. Tex. June 7, 2013) (citing *Cruz*, 2012 WL 1836095, at *4).

U.S. Bank does not dispute that Plaintiff has an interest in the Property and that Plaintiff's title to the property is affected by the Security Instrument on the Property. *See* Dkts. 6 at 2–4; 24 at 7–9. Thus, the only issue before the Court is whether the Security Instrument, although facially valid, is invalid or unenforceable. The Amended Complaint (Dkt. 6) alleges that the Security Interest is invalid and unenforceable because there are "uncured constitutional violations [that] have rendered [U.S. Bank's] underlying lien void *ab initio*." Dkt. 6 at 4. U.S. Bank moves for summary judgment on Plaintiff's suit to quiet title claim, arguing the evidence shows that the Loan Agreement complied with the Texas Constitution. Dkt. 24 at 11.

"In Texas, 'the homestead has always been protected from forced sale, not merely by statute as in most states, but by the Constitution.'" *Rideau v. Fed. Nat'l Mortg. Ass'n*, No. 18-3937, 2019 WL 1789729, at *2 (S.D. Tex. Apr. 24, 2019) (quoting *Garofolo v. Ocwen Loan Servicing, LLC*, 497 S.W.3d 474, 477 (Tex. 2016)). Article XVI, § 50(a) of the Texas Constitution "protects the homestead from foreclosure for the payment of debts" except for a home equity loan that meets the requirements in subsection (6). *See Garofolo*, 497 S.W.3d at 477; *See* TEX. CONST. art. XVI, § 50(c) ("No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section . . . .") "A plaintiff must allege violations of § 50(a)(6) in conjunction with a cause of action to state a claim." *Rideau*, 2019 WL 1789729, at *2 (citing *Garofolo*, 497 S.W.3d at 478).

7

Plaintiff alleges that the Loan Agreement, and, thus, U.S. Bank's lien on the Property, violates the Texas Constitution in three ways: (1) he did not receive "a copy of all finalized and signed loan documents at closing," in violation of Article XVI, § 50(a)(6)(Q)(v) of the Texas Constitution; (2) the loan closed before twelve days after he received notice that the loan was governed by Article XVI, in violation of Article XVI, § 50(a)(6)(M)(i) of the Texas Constitution; and (3) the lender did not properly execute an acknowledgement of fair market value, in violation of Article XVI, § 50(a)(6)(Q)(ix) of the Texas Constitution. Dkt. 6 at 2–3. Thus, the Court considers whether there is a genuine issue of material fact as to each alleged violation of the Texas Constitution.

### i. Section 50(a)(6)(Q)(v)

Section 50(a)(6)(Q)(v) states: "at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit." TEX. CONST. art. XVI, § 50(a)(6)(Q)(v). Plaintiff attested in his Texas Home Equity Affidavit and Agreement (the "Home Equity Affidavit") that "[t]o the best of [his] knowledge and belief, all owners of the Property, after receiving a copy of the final loan application and all documents signed by them at closing, will sign a receipt acknowledging the delivery of such copies." Dkt. 42-1 at 4; *see also Summers v. PennyMac Corp.*, No. 12-cv-1235, 2012 WL 5944943, at *9 (N.D. Tex. Nov. 28, 2012) (relying on a home equity affidavit to grant a motion to dismiss). Plaintiff further signed an acknowledgement that he "received a copy of the final Loan Application and all executed documents [he] signed at closing in connection with the extension of credit on [his] homestead property." Dkt. 24-7 at 2.

The evidence therefore demonstrates that Plaintiff received a copy of the final loan application and all executed documents signed by him at the closing, as required by § 50(a)(6)(Q)(v). Thus, there is no genuine issue of material fact as to the alleged noncompliance with § 50(a)(6)(Q)(v).

### ii. Section 50(a)(6)(M)(i)

Section 50(a)(6)(M)(i) states that a home equity loan cannot close until at least "the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section." TEX. CONST. art. XVI, § 50(a)(6)(M)(i). Accordingly, the loan application and the § 50(g) notice must have both occurred at least twelve days before the closing of the Loan Agreement for there to be no violation of the Texas Constitution. Plaintiff signed and dated the Loan Agreement at the closing on June 12, 2015. Dkts. 24-2 at 2, 4; 24-3 at 11–12. Plaintiff signed and dated the § 50(g) notice on May 18, 2015. Dkt. 24-5 at 4. Thus, at least twelve days elapsed between the date of the § 50(g) notice and the closing of the Loan Agreement.

Furthermore, Plaintiff affirmed in the Home Equity Affidavit that "[t]he Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted a loan application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution." Dkt. 42-1 at 3. Plaintiff's sworn testimony in the Home Equity Affidavit confirms that the loan application was submitted and the § 50(g) notice was received at least twelve days before closing on the Loan Agreement.

9

The evidence shows that Plaintiff submitted the loan application and received a copy of the § 50(g) notice at least twelve days before closing on the Loan Agreement, as required by § 50(a)(6)(M)(i). Thus, there is no genuine issue of material fact as to the alleged noncompliance with § 50(a)(6)(M)(i).

### iii. Section 50(a)(6)(Q)(ix)

Section 50(a)(6)(Q)(ix) states: "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made." TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix). Plaintiff and Joseph A. Miller, the Managing Director of National Operations for Bank of America, N.A., signed the Acknowledgment as to Fair Market Value of Homestead Property, wherein they attested that "the extension of credit is being closed today[,] 06/12/2015, and the fair market of the . . . Property is $400,000.00." Dkt. 24-6 at 2. The closing for the Loan Agreement occurred on June 12, 2015. *See* Dkts. 24-2 at 2; 24-3 at 2.

The evidence shows that the acknowledgment as to the fair market value of the Property was signed by both Plaintiff and the original lender, Bank of America, on the day of closing, as required by § 50(a)(6)(Q)(ix). Thus, there is no genuine issue of material fact as to the alleged noncompliance with § 50(a)(6)(Q)(ix). Because there is no genuine issue of material fact as to any of the alleged violations under the Texas Constitution, the Court recommends that the Motion for Summary Judgment (Dkt. 24) be granted as to this claim.

### 2. Declaratory Judgment

The Declaratory Judgment Act does not itself create a substantive cause of action. *See Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act is procedural only . . . ." (internal citation omitted) (first citing 28 U.S.C. § 2201;

and then citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950))). Rather, a declaratory judgment action allows a party to obtain an "early adjudication of an actual controversy" arising under other substantive law. *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). Because there is no genuine issue of material fact as to any of Plaintiff's alleged violations under the Texas Constitution, there is no actual controversy that would allow Plaintiff to obtain declaratory judgment. Thus, Plaintiff's request for a declaratory judgment fails as a matter of law.

### 3. Permanent Injunction

Plaintiff's request for injunctive relief is equitable in nature and does not constitute an independent cause of action. *See Garza v. J.P. Morgan, Alt. Loan Tr.*, No. 17-cv-82, 2017 WL 6513655, at *13 (S.D. Tex. Oct. 25, 2017), *R. & R. adopted sub nom. Garza v. J.P. Morgan Alt. Loan Tr.*, 2017 WL 6498142 (S.D. Tex. Dec. 18, 2017). "To be entitled to a permanent injunction, one must establish '(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that the injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.'" *Cooper v. Harvey*, No. 14-cv-4152, 2016 WL 4427481, at *22 (N.D. Tex. Aug. 21, 2016) (quoting *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, No. 15-20030, 2016 WL 3063302, at *16 (5th Cir. May 27, 2016)). Because there is no viable underlying legal claim, Plaintiff's request for permanent injunction fails as a matter of law. *See Howard v. AMH ROMAN TWO TX, LLC*, No. 15-cv-526, 2016 WL 3392417, at *5 (E.D. Tex. May 11, 2016) ("A request for equitable or injunctive relief must be premised upon the existence of a viable underlying legal claim."), *R. & R. adopted*, 2016 WL 3382032 (E.D. Tex. June 17, 2016).

B.   **U.S. Bank's Claim**

1.   **Foreclosure**

"To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under [Article XVI] § 50(a)(6) of the Texas Constitution; (3) [the] plaintiff[ is] in default under the note and security instrument; and (4) [the] plaintiff[] received notice of default and acceleration." *Singleton v. U.S. Bank Nat'l Ass'n*, No. 15-cv-100, 2016 WL 1611378, at *7 (N.D. Tex. Apr. 20, 2016) (quoting *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. Dec. 19, 2013)). Plaintiff executed the Note in 2015 for the principal amount of $318,200.00, creating the debt. *See* Dkt. 24-2 at 2. Plaintiff simultaneously executed the Security Interest securing the Note by lien on the Property created under § 50(a)(6). *See* Dkt. 24-3 at 2. Plaintiff failed to make payments, defaulting on the Loan Agreement. *See* Dkt. 24-13 at 3–4. Plaintiff received the notices of default and acceleration via first-class mail on or about March 16, 2022 and July 25, 2022.[2] *See* Dkt. 24-13 at 2–3; 24-14 at 2–6. U.S. Bank has presented sufficient summary judgment evidence to establish the elements of its counterclaim. Because U.S. Bank has met its initial burden, the burden shifts to Plaintiff "to go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *See Little*, 37 F.3d at 1075. However, Plaintiff did not file a response, despite multiple orders from the Court providing Plaintiff the opportunity to participate in this case.[3] *See supra*

---

[2] "The [Texas] Property Code requires the mortgage servicer to serve a debtor in default with written notice by certified mail stating that the note is in default and providing at least 20 days to cure before any notice of sale can be given." *Huston*, 988 F. Supp. 2d at 741 (citing TEX. PROP. CODE ANN. § 51.002(d)). Further, "[s]ervice . . . by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at debtor's last known address." PROP. § 51.002(e).

[3] After granting Plaintiff's counsel's request to withdraw due to Plaintiff's unresponsiveness to his counsel and failure to pay his counsel's fees, the Court made three separate efforts to contact Plaintiff and encourage his participation in this case. *See* Dkts. 34; 37; 40. Each of these attempts has gone unanswered, despite service to Plaintiff's last known address and the e-mail address provided by his former counsel. *See* Dkts. 34–35; 37; 39–40.

12

Section I.B. Hence, there is no contrary evidence for the Court to consider that could raise a fact issue. *See Little*, 37 F.3d at 1075 ("We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." (emphasis omitted)). Thus, the Court recommends that summary judgment be granted as to U.S. Bank's counterclaim.

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion for Summary Judgment (Dkt. 24) be **GRANTED,** and Plaintiff's claim for suit to quiet title be **DISMISSED WITH PREJUDICE**.

The Court further recommends that U.S. Bank be authorized to foreclose its lien on the property that secured the note indebtedness, to wit:

> Lot 21 in Block D, Whiffletree No. X, an addition to the City of Plano, Collin County, Texas, according to the map or plat thereof recorded in Volume J, Page 699 of the Map and/or Plat Records of Collin County, Texas

and which has the address of 4104 Forbes Dr., Plano, Texas 75093-6609, pursuant to the Note and Security Instrument and the Texas Property Code § 51.002.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*,

474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 21st day of February, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE